

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4368
Re: (a) Will the tax im-
posed upon the use of
motor fuel in Texas by
Ch. 184, Art. XVII,
Acts R.S. 47th Leg.,
apply to sales of motor
fuel made to the United
States Engineer Office
of the War Department,
and thereafter turned
over to and used by The
Austin Company, engaged
in the cost-plus con-
tract to construct the
Fort Worth Aircraft As-
sembly Plant at Fort
Worth, and if so, will
the distributor, the
United States Govern-
ment, or the contrac-
tor be liable for such
tax?

Your letter of March 24, 1942, submits for our
opinion the following questions which we quote therefrom,
together with pertinent factual statements:

"The Supreme Court of the United States,
on November 10, 1941, delivered two opinions
relating to State taxes imposed upon products
sold to and used by cost-plus-a-fixed-fee

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George H. Sheppard, Page 2

contractors engaged in the construction of defense projects for the United States Government.

"In the first case, Alabama v. King & Boozer, the respondents, King and Boozer, sold lumber on the order of "cost-plus-a-fixed fee" contractors for use by the latter in constructing an army camp for the United States. The question presented was whether the Alabama sales tax, with which the seller was chargeable under the Alabama law, but which he was required to collect from the buyer, infringed any constitutional immunity of the United States from State taxation. The United States Supreme Court in a rather elaborate opinion held that the said tax was not an infringement of the Government immunity from State taxation.

"The second case, Curry v. United States, a companion case to the foregoing case, presented the question of whether the contractors, by the cost-plus contract involved in the King and Boozer case, were immune from the use tax imposed by the Alabama statutes, because the materials with respect to the use of which the tax was laid, were ordered by the contractors from outside of the State of Alabama and used by them in the performance of their contract with the Government. The Supreme Court in this case held 'that if the statute is applicable to and taxes the contractors upon a cost-plus contract like the present, if entered into with a private person, they are not immune from the tax when, as here, the contract is with the Government.'

"In these cases the opinion reviews the terms of the cost-plus contracts and the provisions of the Alabama Statutes applicable in each case.

"Because of the analogous facts involved with the last named case, Curry v. United States,

Honorable George H. Sheppard, Page 3

some of the Texas distributors have asked this Department whether or not motor fuel purchased by the Government and thereafter delivered to cost-plus-a-fixed fee contractors for exactly the same kind of use described in the Curry case would be subject to the tax imposed upon the use of motor fuel in Texas, and if so, who would be liable for said tax.

"An instant case is that of The Austin Company, a cost-plus-a-fixed fee contractor, engaged in the construction of the Fort Worth Aircraft Assembly Plant, for the United States.

"The United States Engineers office of the War Department, with district headquarters at Denison, Texas, made inquiry of this office on about April 1, 1941, as to whether or not the Comptroller would accept Government Exemption Certification Form 1094 in lieu of payment of the tax upon sales of motor fuel made to the contractors engaged on this project, and was advised to pay the tax and obtain a refund on that part of the motor fuel used for non-highway purposes. The office thereafter advised us it had elected to have the Government purchase the motor fuel directly from the Texas distributors, which procedure they have since followed, the motor fuel having been paid for with warrants drawn on the United States Treasury, War Department. The motor fuel, however, is admittedly turned over to The Austin Company, the cost-plus contractor, and other sub-contractors for use in constructing the project for the Government.

"In order to present a complete picture of the transactions and the cost-plus contractors connections with the project, I have obtained a copy of the Government Contract No. W257-eng-240, with the Austin Company, together with a letter containing some statements of fact from the United States Engineers District office in Denison, which I am attaching

Honorable George H. Sheppard, Page 4

hereto as a part of this request.

"Will you please furnish us with your answer to the following questions:

1. Will the tax imposed upon the use of motor fuel in Texas by Chapter 184, Article XVII, Acts, Regular Session, 47th Legislature, apply to sales of motor fuel made to the United States Engineers of the War Department, and thereafter turned over to and used by The Austin Company, engaged in the cost-plus contract to construct the Fort Worth Aircraft Assembly Plant at Fort Worth, Texas?

2. If you answer affirmatively to the above question, who will be liable to Texas for the tax, the distributor who made the first sale in Texas, the United States Government who purchased the motor fuel for governmental use and thereafter delivered it to a cost-plus contractor, or the cost-plus-a-fixed fee contractor who acquired the motor fuel in Texas without payment of the tax and made the first use of it in Texas?"

We find attached to your letter of submission a copy of the contract referred to in your letter and a letter from the U. S. Engineer Office of the War Department at Denison, Texas, stating that under said contract "all gasoline, lubricating oil, etc. subject to State use taxes were paid for directly by the Government and any applicable State taxes were covered by standard form 1094, Tax Exemption Certificate. It is also pointed out therein, in addition to the direct payments by the Government for materials, etc. that title to all materials delivered to the site of the work vested in the United States upon such delivery, under the contract.

An examination of the instant contract, in its entirety, persuades us that The Austin Company of Cleveland, Ohio, occupies the status of an independent contractor with

831

the United States of America, through the War Department, for the construction of an aircraft assembly plant, rather than that of an agency or instrumentality of said Government, and therefore, under our opinion No. 3049, directed to you, and under the two recent decisions of the Supreme Court of the United States, adverted to by you, falls squarely within the rule of liability for State sales and use taxes, unless immunity from such taxes is conferred by the Government becoming the direct purchaser of the material used, a feature which was not present in the factual situation before this department and, apparently, before the Supreme Court in the opinion and the decisions referred to. In the latter instances, it was provided in the contract and contended by the contractor and by the Government, that title to the material or commodities involved in each contract became vested in the United States of America upon delivery so as to constitute the United States, through its agent contractor, the real purchaser of the materials and therefore, under Constitutional principles, exempt from sales and use taxes levied by States. The Supreme Court rejected this contention and held that despite such contractual provision and factual situation, the obligation to pay for the materials rested upon the cost-plus-a-fixed-fee contractor, to whom the vendor looked for payment, and that the Government's duty was that of mere reimbursement under the contract.

We, therefore, say that this same feature of the vesting of title, on delivery, in the Government, which is embodied in the instant contract and pointed out as the position of the War Department, will not avail to remove the present situation from the controlling decisions referred to. The only feature to be considered by us in determining whether or not the instant factual situation may be so differentiated from that upon which the cited authorities turned, as to require a different conclusion by us, is the present policy and practice of the Government of invoking that clause of the contract allowing direct payments to the vendor of the materials, by the Government rather than by the contractor.

Honorable George H. Sheppard, Page 6

That this feature was not before the Supreme Court of the United States in the leading case of Alabama vs. King and Boozer, 86 Law. Ed. 1, is indicated by the following language of the Court, upon the record before it:

"A section of the contract, designated as one of several 'special requirements,' stipulated that contractors should 'reduce to writing every contract in excess of two thousand dollars ($2,000) made by him for the purpose of the work hereunder for services, materials, supplies. . . .; insert therein a provision that such contract is assignable to the Government; make all such contracts in his own name, and not bind or purport to bind the Government or the contracting officer thereunder.' While this section refers to contracts in excess of $2,000, we think all the provisions which we have mentioned, read together, plainly contemplate that the contractors were to purchase in their own names and on their own credit all the materials required, unless the Government should elect to furnish them; that the Government was not to be bound by their purchase contracts, but was obligated only to reimburse the contractors when the materials purchased should be delivered, inspected and accepted at the site.

"The course of business followed in the purchase of the lumber conformed in every material respect to the contract. King and Boozer submitted to the contractors in advance a proposal in writing to supply as ordered, at specified prices, all the lumber of certain description required for use in performing their contract with the Government. The contractors, after procuring approval by the contracting officer of the particular written order for lumber with which we are presently concerned, placed it with King and Boozer on January 17, 1941.

Honorable George H. Sheppard, Page 7

It directed shipment to the Construction Quartermaster at the site 'for account of' the contractors and stated 'this purchase order does not bind, nor purport to bind, the United States Government or Government officers.' King and Boozer thereupon shipped the lumber ordered by the contractors by contract trucks to the site as directed, where it was used in performance of the contract. The sellers delivered to the contractors the invoice of the lumber, stating that it was 'sold to the United States Construction Quartermaster $' (for account of) the contractors.[2] The invoice was then approved by the Construction Quartermaster for payment; the contractors paid King and Boozer by their check the amount of the invoice and were later reimbursed by the Government for the cost of the lumber.

"We think, as the Supreme Court of Alabama held, that the legal effect of the transaction which we have detailed was to obligate the contractors to pay for the lumber. The lumber was sold and delivered on the order of the contractors which stipulated that the Government should not be bound to pay for it. It was in fact paid for by the contractors who were reimbursed by the Government pursuant to their contract with it. The contractors were thus purchasers of the lumber within the meaning of the taxing statute, and as such were subject to the tax. They were not relieved of the liability to pay the tax either because the contractors in a loose and general sense were acting for the Government in purchasing the lumber or, as the Alabama Supreme Court seems to have thought, because the economic burden of the tax imposed upon the purchaser would be shifted to the Government by reason of its contract to reimburse the contractors." (Emphasis ours)

Honorable George H. Sheppard, Page 8

In connection with the footnote appearing in the above quotation, we copy this significant statement appearing under said footnote No. 2.

"[2]The statement that the lumber was 'sold' to the Construction Quartermaster appears to have been inadvertent. On the argument the Government conceded that this was not the usual practice. The invoices appearing of record in No. 603, Curry v. United States (--US--, post, 6, 62 S Ct--) issued to the same contractors for supplies ordered by them and delivered at the same site stated that the supplies were sold to the contractors."

In holding the cost-plus-a-fixed-fee contractor liable for State excise taxes on materials purchased directly by such contractor, the Court did not state or intimate what its decision would be, with reference to such taxability, if the Government should elect, under a clause of the contract before it, identical to one contained in the instant contract, to purchase and pay directly for materials necessary to performance of the job; and we are not at liberty to speculate upon what such ruling will be or to extend the rule of taxation announced in this case, under the facts appearing from the above quotation therefrom, to the different factual situation before us and hereinabove pointed out.

Assuming then that the Government is here electing to exercise its contractual right of purchasing, in its own name and directly, all motor fuel, etc. used upon this job, paying the vendor directly and not merely on behalf of the contractor, it is our opinion that no taxable sale of motor fuel transpired between the distributor-vendor and the Federal Government, by and through its duly constituted purchasing personnel. We reach this conclusion because of the legal incidence of the motor fuel tax upon the ultimate user or consumer of the motor fuel for the propulsion of motor vehicles upon the highways of the State of Texas. If this tax were laid by the Legislature as a tax upon the

seller or the vendor, each motor fuel distributor in
Texas selling motor fuel under the facts given and as-
sumed, would be liable for this tax under the principles
announced in the cases of James vs. Dravo Contracting
Company, 302 U.S. 134, 82 Law Ed. 155, 58 Sup. Ct. 208,
Curry v. United States, 84 Law Ed. and Alabama vs. King
and Boozer, supra, despite the fact that such sales were
made directly to the Federal Government its agencies and
instrumentalities. The legal incidence of the tax would
then fall on the vendor rather than the purchaser, al-
though the amount of the tax might be included in the
purchase price so as to increase the cost of the pro-
duct to the purchaser. That such economic rather than
legal burden of a tax is too remote and indirect to
constitute an unconstitutional burden upon the Federal
Government, has been recognized and conceded by a de-
cision of the Comptroller General of the United States,
released on March 6, 1942, and the proposition is only
mentioned here to avoid confusion in future rulings of
this department on other revenue measures.

Therefore, since the legal incidence of the
privilege or use tax levied by the present Motor Fuel
Tax Law of Texas, cited above, is upon the ultimate user
or consumer of such motor fuel for the propulsion of
motor vehicles upon the public highways, and the statu-
torily defined "distributor", making a "first sale" of
such motor fuel in Texas, is merely a bonded fiduciary or
agent of the State for collection purposes (see Sec. 2 (a),
(b), and (c) of Article 7065B, V.A.C.S.), it is pertinent
to inquire if the Government is the user or consumer of
this motor fuel upon the highways so as to accrue a tax,
albeit it is, for purposes of this opinion, assumed to
be the first purchaser of such motor fuel. Admittedly,
the Government, after its purchase of the motor fuel neces-
sary for the due prosecution of the work, under the con-
tract, turns over and delivers such motor fuel to The
Austin Company for its use in the construction of the
aircraft assembly plant under contract. If said Austin
Company were a mere agent or instrumentality, under its
contract, of the United States Government, for the con-
struction of the plant in question, use of motor fuel by
said company upon the highways of this State would be, in

contemplation of law, use of such motor fuel by the Federal Government; and no tax would probably accrue, unless such tax should be considered a toll or charge for use of property or facilities of the State and therefore collectible even from the Federal Government, a question not necessary to determine here. If, on the other hand, The Austin Company is an independent contractor rather than an agent of the government, its use of the motor fuel upon the highways would be taxable to the extent of 4¢ for each and every gallon so used, the same as such use of motor fuel by any other person, firm or corporation engaged in business in this State, whether construction or otherwise. We submit that this controlling issue is foreclosed by the Supreme Court of the United States in Alabama vs. King & Boozer, supra, wherein the contention of the Government that the contractor in question was its agent, was rejected by the Court. The contract before the Court in this case is, as far as can be determined by the facts stated by the Court, substantially identical to the one before us, in its pertinent features. But if this decision does not conclusively determine this issue, then, it is our further conclusion that our opinion No. 3049, involving a cost-plus-a-fixed-fee contract substantially identical to the instant one, is determinative of the status of The Austin Company as an independent contractor rather than an agent or instrumentality of the Government.

Hence, we reach the conclusion that said Austin Company, as the ultimate user or consumer of a portion of the motor fuel in question upon the highways of this State, in the construction of an aircraft assembly plant as an independent contractor, is the real tax payer in this involved factual situation. Whether said company receives this motor fuel as vendee or donee of the Government is a matter of private negotiation and contract between the Government and its contractor, of which the Motor Fuel Tax Law takes no cognizance. Said tax measure looks to the ultimate user or consumer for the tax, in the event the agencies set up by the Act for collection purposes are unable, as in the instant case, to discharge their statutory burden of collecting the tax on the "first sale" of the motor fuel in Texas. Here, the "first sale", upon which a tax would ordinarily be collected by the distributor from

Honorable George H. Shepperd, Page 11

his vendee, and, in turn, by successive vendors from
their vendees, up to the ultimate consumer, was made
directly to the Federal Government; and therefore said
distributor-vendor, under plain constitutional principles
hereinabove discussed, was unable to enforce collection of
such tax. Moreover, the State is powerless under the same
constitutional immunities, to require the collection of
such tax.by the Government on the second transfer or de-
livery of the motor fuel by sale or gift to the contractor,
The AustinCompany. But when said Austin Company, acquires
or possesses such motor fuel upon which no tax has been
paid nor could be collected, regardless of the manner in
which such motor fuel is acquired, a tax will immediately
accrue in favor of the State upon its use upon the high-
ways, unless said contractor, within itself, occupies
some status of exemption or immunity from taxation, a
fact which we have found not to exist in this case.
We think this result is required by the very pertinent
provisions of Article 7065S-2, (d) Vernon's Texas Civil
Statutes:

"No tax shall be imposed upon the sale, use,
or distribution of any motor fuel, the imposing
of which would constitute an unlawful burden on
interstate commerce and which is not subject to
be taxed under the Constitution of the State of
Texas and the United States. In the event this
Article is in conflict with the Constitution or
any law of the United States with respect to
the tax levied upon the first sale, distribu-
tion, or use of motor fuel in this State, then
it is hereby declared to be the intention of
this Article to impose the tax levied herein upon
the first subsequent sale, distribution, or use
of said motor fuel which may be subject to being
taxed."

In summation, we answer your first question
in the affirmative, and for answer to your second question,
hold that the cost-plus-fixed-fee contractor in the contract
under consideration, is or will become liable to the State
for the statutory tax on all motor fuel used by it upon the

Honorable George H. Sheppard, Page 12

highways of this State in connection with the subject contract; but the distributor, selling such motor fuel to the United States government, and the government, in turn, delivering such motor fuel to said contractor, will not be required, upon the first or subsequent sale or gift of such motor fuel, to collect such tax from said contractor, as the ultimate user and tax payer.

Trusting the foregoing fully answers your inquiry, we are

Yours very truly

APPROVED MAY 28, 1942

ATTORNEY GENERAL OF TEXAS

FIRST ASSISTANT
ATTORNEY GENERAL

By

Pat M. Neff, Jr.
Assistant

PMN:FY


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN